## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Crim. No. 12-cr-211 (JDB)** |
| **JON C. COOPER,** | |
| **Defendant.** | |

## MOTION TO RECONSIDER ORDER TO TAKE FOREIGN DEPOSITIONS

Defendant Jon C. Cooper respectfully requests the Court reconsider its Order to take Foreign Depositions.  Dkt. 20, Dec. 28, 2012.  For the reasons set forth below, Mr. Cooper strenuously objects to the government's plan to take the depositions of Mr. Hotasi Nababan and Mr. Tony Sudjiarto under Rule 15 of the Federal Rules of Criminal Procedure.  Such a deposition of the government's alleged victims in Indonesia in the circumstances of this case would violate the Defendant's rights under the Confrontation Clause and the Right to Present a Defense of the United States Constitution.

## I.      Authority for Motion to Reconsider

Although motions to reconsider are not expressly provided for by the Federal Rules of Criminal Procedure, courts have long recognized that litigants may properly file them and judges may properly rule upon them.  *See, e.g.*, *United States v. Dieter*, 429 U.S. 6, 8 n.3 (1976) (referring to motions to reconsider in criminal cases as a "traditional and virtually unquestioned practice") (internal quotation omitted); *United States v. Ibarra*, 502 U.S. 1, 4-7 (1991).  *See also*

*United States v. Fiorelli*, 337 F.3d 282, 286 (3d Cir. 2003) ("motions for reconsideration may be filed in criminal cases"); *United States v. Clark*, 984 F.2d 31, 33-34 (2d Cir. 1993).  More specifically, motions for reconsideration in criminal cases are part of the accepted practice in this District.  *See, e.g.*, *United States v. Cabrera*, 699 F. Supp. 2d 35, 40 (D.D.C. 2010) (Hogan, J.) (entertaining a motion for reconsideration in a criminal case and noting that many judges on the Court have done so).

II.     **The Court Should Not Permit the Government to Take Mr. Hotasi Nababan and Mr. Tony Sudjiarto's Testimony by Video Deposition Because That Will Deny Cooper Meaningful Confrontation**

Mr. Cooper objects to the government's plan to take and use Mr. Hotasi Nababan and Mr. Tony Sudjiarto's testimony by video-taped deposition on the grounds that it will violate his right to confront witnesses in the circumstances of this case.  The Confrontation Clause of the Sixth Amendment is an essential part of the criminal trial's truth seeking function.  It guarantees the right of defendants, "[i]n all criminal prosecutions . . . to be confronted with the witnesses against him." U.S. Const. amend. VI.  That clause's "central concern . . . is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990).  The essence of the Confrontation Clause has not changed since the Supreme Court articulated it more than one hundred years ago:

> The primary object of [the Confrontation Clause] was to prevent *depositions* or *ex parte* affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, *but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand*

> *and the manner in which he gives his testimony whether he is*
> *worthy of belief.*

*Mattox v. United States*, 156 U.S. 237, 242-43 (1895) (emphasis added).  Indeed, the Supreme

Court has characterized confrontation as the "greatest legal engine ever invented for the

discovery of truth."  *Kentucky v. Stincer*, 482 U.S. 730, 736 (1987) (quoting *California v. Green*,

399 U.S. 149, 158 (1970)).

However, the Court has held that the right to confront witnesses in person is not an

absolute requirement.  *Craig*, 497 U.S. at 849.  In *Craig*, the Supreme Court held that a district

court may constitutionally admit testimony taken in the physical absence of the defendant so

long as two conditions are met.  *Id*. at 850.  First, the denial of "face-to-face confrontation" must

be "necessary to further an important public policy." *Id*.  Second, the district court must ensure

that protections are put in place so that "the reliability of the testimony is otherwise assured."

*Craig*, 497 U.S.at 850.  With respect to the first requirement, courts have held that the

government cannot rely on a general policy interest in enforcing the criminal laws to override

constitutional rights.  *See United States v. Abu Ali*, 528 F.3d 210, 241 (4th Cir. 2008) ("*Craig*

plainly requires a public interest more substantial than convicting someone of a criminal

offense.").[1]  The *Craig* Court provided a blueprint on how to satisfy the second requirement

---

[1] In *Craig*, the Supreme Court indicated that confrontation rights "may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Craig*, 497 U.S. at 850.  For example, the *Craig* court found that  "a State's interest in the physical and psychological well-being of child abuse victims may be sufficiently important to outweigh, at least in some cases, a defendant's right to face his or her accusers in court." *Craig*, 497 at 853.  Likewise, in *Gigante*, the Second Circuit permitted a fatally ill witness in the Witness Protection Program to testify via videoconference.  *United States v. Gigante*, 166 F.3d 75, 80-81 (2d Cir. 1999) (holding "that the closed-circuit presentation of Savino's testimony afforded greater protection of Gigante's confrontation rights than would have been provided by a Rule 15 deposition. It forced Savino to testify before the jury, and allowed them to judge his credibility through his demeanor and comportment; under Rule 15 practice, the bare transcript of Savino's deposition could have been admitted, which would have precluded any visual assessment of his demeanor. Closed-circuit testimony also allowed Gigante's attorney to weigh the impact of Savino's direct testimony on the jury as he crafted a cross-examination.")  The *Abu Ali* court found that the Government's interest in preventing terrorism was sufficient to keep a defendant charged with planning terrorist attacks from traveling to

when it noted that "the presence of [the] other elements of confrontation—oath, cross-examination, and observation of the witness' demeanor—adequately ensure[ ] that the testimony is both reliable and subject to rigorous adversarial testing in a manner functionally equivalent to that accorded live, in-person testimony." *Id*. at 851.

More recently, the Court articulated a second two-prong test to determine whether the Confrontation Clause bars out-of-court testimonial statements in *Crawford v. Washington*. 541 U.S. 36, 68 (2004). The Court ruled that such statements are inadmissible unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Id*. at 68. In its opinion, the Court heavily emphasized the importance of cross-examination, suggesting that adequate cross-examination is the critical factor in Confrontation Clause analysis. *Id*. at 43-51.

Consistent with the importance of the rights safeguarded by the Confrontation Clause, "[d]epositions generally are disfavored in criminal cases." *United States v. Drogul*, 1 F.3d 1546, 1551 (11th Cir. 1993). In particular, "'foreign depositions are suspect and consequently, not favored,' due, in significant part, to the fact that the witness is not subject to the imposition of perjury or contempt for testifying falsely or evasively." *United States v. Sanford, Ltd*, 860 F. Supp. 2d 1, 10 (D.D.C. 2012) (quoting *United States v. Oudovenko*, NO. 00-CR-1014, 2001 WL 253027, at *3 (E.D.N.Y. Mar. 7, 2001); *see also United States v. Mueller*, 74 F.3d 1152, 1156 (11th Cir. 1996) (depositions in foreign countries are particularly disfavored); *Drogoul*, 1 F.3d at 1551 ("In particular, because of the absence of procedural protections afforded parties in the United States, foreign depositions are suspect and, consequently, not favored."); *United States v.*

_____

(continued…)

Saudi Arabia to attend depositions there. *See Abu Ali*, 528 F.3d. at 239, 241–42. This case is devoid of any compelling interest sufficient to deny Mr. Cooper his constitutional rights. It is a routine fraud case that fits squarely within the Fourth Circuit's holding that *Craig* plainly requires a public interest more substantial than convicting someone of a criminal offense. *See Abu Ali*, 528 F.3d at 241.

*Alvarez*, 837 F.2d 1024, 1029 (11th Cir.), *cert. denied*, 486 U.S. 1026 (1988).  Accordingly, the

Federal Rules of Criminal Procedure allow the government to take and use depositions only in

"exceptional circumstances" when "it is in the interest of justice" to do so.  *See* Fed. R. Crim. P.

15(a).  That rule, however, places a heavy burden on the party seeking to take the deposition,

requiring the movant to prove that those conditions exist, and demonstrate: (1) that the witness is

unavailable; (2) that the witness's testimony is material; and (3) the lack of "countervailing

factors" that would make the deposition unjust to the nonmoving party.  *United States v. Thomas*,

62 F.3d 1332, 1340-41 (11th Cir. 1995); *see also United States v. Kelley*, 36 F.3d 1118, 1125

(D.C. Cir. 1994).

 Before the testimony given in a foreign country may be admitted into evidence at a

criminal trial, the moving party must comply with Rule 15(f), which authorizes the Court to

introduce that deposition testimony as provided by the Federal Rules of Evidence.  However,

"[c]ompliance with Rule 15 is a necessary but not sufficient condition for use of a deposition at

trial.  *See United States v. McKeeve*, 131 F.3d 1, 8 (1st Cir. 1997).  Rather, admissibility at trial

requires compliance with Rule 15, Rule 16, *Brady* and its progeny, the Federal Rules of

Evidence, and the Constitution's Confrontation Clause.  *Id*.

 In *McKeeve*, a case involving the use of deposition testimony taken in Great Britain, the

First Circuit was confronted with the question of the admissibility of that deposition testimony as

"former testimony" under Rule 804(b)(1) of the Federal Rules of Evidence.  *Id*. at 9.  The

*McKeeve* court held that a deposition in another country could qualify as former testimony if the

deposition is conducted with "sufficient indicia of reliability."  *Id*. at 9-10.  That is, if it

approximates trial conditions to a significant degree.  The court listed the following factors to

consider:  the administration of an oath; unlimited direct and cross-examination by attorneys for

all parties; the ability to lodge objections; oversight by a judicial officer; the compilation of the transcript by a trained solicitor; and the lack of a language barrier.  *Id*. at 10.

In *McKeeve*, the First Circuit also discussed the "resultant tension" between a defendant's constitutional right to confront witnesses and the government's need to obtain evidence under Rule 15 from a foreign national outside the government's subpoena power.  *Id*. at 8.  While acknowledging the increasing frequency of prosecutions involving foreign witnesses, the *McKeeve* court carefully pointed out that deposition testimony in criminal trials is still "disfavored" precisely because it "tends to diminish a defendant's Sixth Amendment confrontation rights."  *Id*.  The court invited the district courts to strike a balance in view of "the necessities of trial" and the "adversary process" at stake in each particular case:

> filtering constitutional concerns through a seine woven of practical necessity is a tricky business, and different situations likely will yield different accommodations.

*Id*.

Here, the Court should exercise its discretion against a deposition of Mr. Hotasi Nababan and Mr. Tony Sudjiarto because the proposed depositions do not afford Mr. Cooper the most basic "confrontational elements" envisioned by *Craig, Crawford*, or *McKeeve*—namely, an oath, and an opportunity for cross-examination—to "adequately ensure [] that the testimony is both reliable and subject to rigorous adversarial testing in a manner ***functionally equivalent to that accorded in live, in-person testimony***."  *Craig*, 497 U.S. at 851 (emphasis added).  The proposed depositions not only offer no face-to-face confrontation, but they fatally fail to offer a meaningful oath and a full and fair opportunity to probe and expose infirmities through cross-

examination.[2]  Accordingly, the proposed depositions could never be cured to allow for admissibility at trial.

### III.    Now is the Appropriate Time to Deny the Rule 15 Depositions

Mr. Cooper notes that the Court has previously ruled that "the text and structure of Rule 15, as well as judicial opinions interpreting the rule, distinguish between the *availability* of a deposition and the eventual *admissibility* of the deposition testimony at trial," *United States v. Njock Eyong*, No. 06-205, 2007 WL 1576309, at *1 (D.D.C. 2007) (Bates, J.), and that Confrontation Clause concerns arise only *when* and *if* the adverse testimony is offered into evidence against him.  *See, e.g.*, *Drogul*, 1 F.3d at 1554 ("We fail to see, however, how the mere taking of depositions threatens [the right of cross-examination].  Only when deposition testimony is sought to be introduced in evidence are the defendant's confrontation rights truly implicated.")  However this Court has noted that it does not wish to see the parties go through the expense and trouble of taking these depositions only to have their admission subsequently challenged on Confrontation Clause grounds.  *See* Dkt. 33, Mar. 1, 2013, Hearing Transcript 14:4-20 ("To the extent that any issues can be resolved before the depositions occur, it seems to me that's the right way to go.  It's going to save time and effort at a time when the government really needs to save

---

[2] Mr. Cooper also notes that it remains unclear whether the proposed depositions would be video-taped to afford the jury the opportunity to observe the witness's demeanor.  In an attempt to make concrete arguments rather than speculative arguments, we do not directly address the issue in the instant Motion for Reconsideration.  However, courts within this Circuit recognize the importance of the jury's ability to observe the witness during his testimony.  "[I]t is not only the right to cross-examine, but the right to have the witness testify before the jury that the Confrontation Clause guarantees.  'The Confrontation Clause . . . gives defendants the right to have the jury observe the demeanor of witnesses against the accused.'"  *Brooks v. United States*, 39 A.2d 873, 884 (D.C. 2012) (quoting *Jones v. United States*, 441 A.2d 1004, 1006 (D.C. 1982) (citing *Barber v. Page*, 390 U.S. 719, 725, 88 S.Ct. 1318, 1322 (1968); *Mattox v. United States*, 156 U.S. 237, 242-43, 15 S.Ct. 337, 339 (1895))).  It is axiomatic that "[d]emeanor is of the utmost importance in the determination of credibility of a witness."  *Gov't of the Virgin Is. v. Aquino*, 378 F.2d 540, 548 (3d Cir. 1967).  "[T]he cold transcript cannot reveal . . . nuances of tone, body language, eye contact and other indicia from which jurors can draw, based on their own experience, to infer the reasons for the witness's evasiveness or pugnaciousness."  *Brooks*, 39 A.2d at 885 (citing *In re Temple*, 629 A.2d 1203, 1208-09 (D.C. 1993) ("The factfinder who hears the evidence and sees the witnesses is in a better position to make [credibility] determinations, having the benefit of those critical firsthand observations of the witness's[s] demeanor or manner of testifying which are so important to assessing credibility.")).

the money, Mr. Hooks, and maybe to keep two people from having to be furloughed here and

there."). Therefore, it is prudent to rule on these incurable deficiencies now. *See Drogul*, 1 F.3d

at 1555 ("The court need not, at the cost of time and money, engage in an act of futility by

authorizing the depositions that clearly will be inadmissible at trial.").

**IV.   Allowing the Government to Present Mr. Hotasi Nababan and Mr. Tony Sudjiarto's Testimony by Videotaped Deposition Does Not Approximate Trial Conditions And Will Deny Cooper a Meaningful Opportunity to Confront Them**

   **1.   No Oath**

   In assessing the reliability of foreign deposition testimony, the *McKeeve* court and others

look to the administration of an oath as an essential factor.  Indeed, in *Craig*, the Supreme Court

again stressed the presence of an oath as an important assurance that the testimony is reliable.

*Craig*, 497 U.S. at 851.  Here, however, Mr. Nababan and Mr. Sudjiarto will not be required to

take any ***meaningful*** oath prior to testifying at this deposition.  While the Law of the Republic of

Indonesia Number 1 Year 2006 Concerning Mutual Legal Assistance in Criminal Matters

suggests that the Request for Assistance must include "details of specific procedures or

requirements ***desired*** to be complied with, including concerning ***whether or not legal means of***

***proof required are to be made under oath or pledge***,"  there is no guarantee that such an oath

will actually be administered. *See* Law of the Republic of Indonesia Number 1 Year 2006

Concerning Mutual Legal Assistance in Criminal Matters, Chapter III, Article 28 (f) (Exhibit A)

(emphasis added); *see also* United States Department of State website on Indonesian Judicial

Assistance (*available at* travel.state.gov/law/judicial/judicial_651.html) (Exhibit B) (providing

that a voluntary deponent "may refuse to take an oath or refrain from answering any or all

questions").  Where a witness will not declare to testify truthfully, and defense counsel objects to

the admission of the testimony, it is an abuse of discretion to admit the testimony. *United States*

*v. Hawkins*, 76 F.3d 545, 551 (4th Cir. 1996) ("[T]estimony taken from a witness who has not given an oath or affirmation to testify truthfully is inadmissible.  Admission of inadmissible testimony over a party's objection is an abuse of discretion, recognized on appeal as error.") (citing Fed. R. Evid. 603); *see also United States v. Fowler*, 605 F.2d 181, 185 (5th Cir. 1979) (trial court properly prohibited defendant from testifying under Rule 603 where defendant refused to swear or affirm to tell the truth, finding "[n]o witness has the right to testify but on penalty of perjury and subject to cross-examination"); *United States v. Fiore,* 443 F.2d 112, 114-15 (2d Cir. 1971) (reversing district court's decision to admit the testimony of a witness who refused to be sworn, finding that the witness "was not a witness at all").

Even if an oath is administered at the deposition, that oath will be rendered meaningless without any power to enforce it.  *See Alvarez*, 837 F.2d at 1029 (refusing to permit a Rule 15 deposition of a foreign witness since "[f]oreign deposition testimony, because of the absence of a sanction for perjury, is suspect"); *United States v. Feijoo-Tomala*, 751 F. Supp. 40, 43 (E.D.N.Y. 1990) ("Finally, the Court notes that foreign deposition testimony, such as the defendant desires to take of her nieces in Ecuador, is suspect because it lacks the sanction of perjury.").  The Indonesian Criminal Code provides a penalty for perjury.  Article 242(1) states (in official English translation):

> Any person who is in the cases ***that a statutory provision demands a testimony under oath or attaches legal consequences to it***, orally or in writing, personally or by special proxy, with deliberate intent makes a false testimony under oath, shall be punished by a maximum imprisonment of seven years.

Penal Code of Indonesia, Chapter IX. Perjury and False Testimony, Article 242, Paragraph 1 (Exhibit C) (emphasis added).  However, we have been advised that no Indonesian statute is

likely to attach legal consequences to a voluntary deposition for use in a foreign court.[3]  Failing

to find legal consequences for perjury under Indonesian law, the Court might consider whether

U.S. perjury laws have extra-territorial effect.  The general perjury statute, 18 U.S.C. § 1621, is

applicable whether the statement or subscription is made within or without the United States.  To

be subject to 18 U.S.C. § 1621, Mr. Nababan and Mr. Sudjiarto would have to take an oath

"before a competent tribunal, officer, or person, in any case in which a law of the United States

authorizes an oath to be administered."  Even assuming *arguendo* that 18 U.S.C.  § 1621 applied

to the depositions of Mr. Nababan and Mr. Sudjiarto in Indonesia, the United States has no

extradition treaty with Indonesia, *see* 18 U.S.C. § 3181 (listing bilateral extradition treaties, not

including Indonesia), and therefore, they could not be punished.

Rule 28(b) of the Federal Rules of Civil Procedure, made applicable to criminal

proceedings through Rule 15 of the Federal Rules of Criminal Procedure, provides an exception

to the oath requirement for foreign depositions.  It provides, in relevant part:

> Evidence obtained in response to a letter of request need not be excluded merely
> because it is not a verbatim transcript, because the testimony was not taken under
> oath, or because of any similar departure from the requirements for depositions
> taken within the United States under these rules.

---

[3]  In contrast, the Law of the Republic of Indonesia Concerning Mutual Legal Assistance in Criminal
Matters provides that if Mr. Nababan and Mr. Sudjiarto testified ***in a U.S. Court***, they could be criminally punished
for perjury.  Chapter III, "Request to the Government of the Republic of Indonesia," Part Four, "Assistance for
Arranging the Attendance of a Person in the Requesting State," Article 36(b) provides:

> Prior to giving approval for the provision of Assistance as referred to in Article 35, the
> Minister must receive assurances from the Requesting State with respect to the following
> matters:
>
> . . .
>
> b.  that any statement given by the Person whose attendance requested ***may not be
> recognized or used in the prosecution against the Person concerned*** for violation of
> laws of the Requesting State, ***other than violations in the form of provision of false
> information or perjury***.

(emphasis added) (Ex. A).

Fed. R. Civ. P. 28(b).  *See also United States v. Casamento*, 887 F.2d 1141, 1175 (2d Cir. 1989) (noting Rule 603's requirement, but finding that "a deposition taken in a foreign country may be admissible in a criminal trial in the United States despite the deposition's having been taken in a manner which does not strictly accord with federal law"); *United States v. Badalamenti*, No. 84 Cr. 236, 1985 WL 3844, at *3 (S.D.N.Y. Nov. 8, 1985) (noting in the context of foreign depositions "'[e]vidence obtained in response to a letter rogatory need not be excluded merely for the reason . . . that the testimony was not taken under oath.' Fed. R. Civ. P. 28(b), made applicable to criminal proceedings by Fed. R. Crim. P. 15(d) and 18 U.S.C. § 3503(d)").

However, notwithstanding the explicit exception for foreign depositions in the rules, courts still reject that testimony as unreliable for lack of a meaningful oath.  *See Alvarez*, 837 F.2d at 1029; *Feijoo-Tomala*, 751 F. Supp. at 43.  An oath to tell the truth, in whatever form, is designed to "awaken the witness' conscience and impress the witness' mind with the duty" to tell the truth.  Fed. R. Evid. 603. Where a witness will swear an oath, but is not subject to a perjury prosecution for giving false testimony, the oath is ineffective and the testimony should be precluded.  *Oudovenko*, 2001 WL 253027, at *3 (denying motion for pretrial depositions of overseas witness where there was "no realistic perjury sanction").  Here, there is no way to impart on Mr. Nababan and Mr. Sudjiarto that they have a duty to tell the truth when they are beyond the power of the Court.  The lack of any means to enforce that oath is especially worrisome here since the government intends to rely heavily on these witnesses' testimony as the victims of the alleged fraud.

**2.      Cooper Cannot Conduct a Meaningful Cross-Examination of Mr. Nababan and Mr. Sudjiarto at a Deposition By Written Question in Indonesia Months Before Trial**

"The rights safeguarded by the Confrontation Clause center on the right to cross-examine a witness for the government's case." *Brooks*, 39 A.2d at 884.  The proposed depositions in Indonesia deny Mr. Cooper the opportunity for meaningful cross-examination, even if he is allowed to be present via video-conference and his counsel could attend and question Messers Nababan and Sudjiarto.[4]  The deposition would occur months before the government gives its opening statement in this case.  That makes little difference to the government since the government presumably knows what theories it will advance to the jury, how it will characterize the events at issue at trial, and how it will attempt to craft the deponents' testimony to fit within those theories and events.  Without having heard the government's opening statement, observed the testimony of any other witnesses, or received all of the *Brady*, *Giglio*, and *Jencks* Act material,[5] Mr. Cooper will be left to guess as to how to cross-examine the alleged victims of the fraud while the government unfairly has the opportunity to shape trial testimony in advance.

---

[4] The availability of video-conference during the proposed depositions has not been confirmed.

[5] Mr. Cooper formally requested all *Brady*, *Giglio*, and *Jencks* Act material from the government on March 19, 2013 (Rec. Doc. 34) so he would be in a fair position to try to question the deponents.  We requested a response by April 5, 2013, and have received no communication from the government.  Therefore, we will file a Motion to Compel the requested information.  At a minimum, Rule 15 requires that "[t]he government must provide to the defendant or the defendant's attorney, for use at the deposition, any statement of the deponent in the government's possession to which the defendant would be entitled at trial."  Fed. R. Crim. Pro. 15(e)(3).  However, to properly prepare for these depositions, the defense needs all *Brady*, *Giglio*, and *Jencks* Act material, information to which we are entitled for the defense afforded to us by the Constitution.

Deposing these witnesses when the defense is nowhere close to trial-ready position not only deprives Mr. Cooper of the right to cross-examine the witnesses, it also deprives Mr. Cooper of the right to consider how he might rely on the testimony of Mr. Nababan and Mr. Sudjiarto to affirmatively establish his own defense.  It is a fundamental guarantee of the Sixth Amendment to the Constitution that a criminal defendant has the right to present a defense to the charges he is facing. *Washington v. Texas*, 388 U.S. 14, 19 (1967).  Conducting the depositions as proposed would unfairly deprive Mr. Cooper of this right, and would constitute a constitutional violation. *See Id*. at 19 (where the Supreme Court explained that "[t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies.  Just as an accused has the

Compounding this prejudice is the fact that Mr. Cooper has no way of procuring evidence that could be utilized to impeach the statements of Mr. Nababan and Mr. Sudjiarto, as these witnesses, and impeachable materials on said witnesses, are outside the subpoena power of the United States.  One of the purposes of the Confrontation Clause is "to augment accuracy in the fact-finding process by ensuring the defendant an effective means to test adverse evidence." *United States v. Deeb*, 13 F.3d 1532, 1537 (11th Cir. 1994).  In our adversary system, it is the job of the defendant to try to show that the witness is committing perjury, or inaccurately or incompletely recalling the facts by omission, mistake, or lie.  The Eleventh Circuit has held that the "Confrontation Clause is satisfied when the defense is given a full and fair opportunity to probe and expose . . . infirmities through cross-examination, thereby calling to the attention of the fact-finder the reasons for giving scant weight to the witness' testimony." *Dorsey v. Chapman*, 262 F.3d 1181, 1188 (11th Cir. 2001) (citations omitted).  However, without full disclosure of the government's theory of the case, as well as the *Brady, Giglio*, and *Jencks* material, there is no way Mr. Cooper can test the accuracy of the Indonesian nationals' testimony. As discussed previously, any potential oath has no teeth with which to bite any alleged perjurers, and Mr. Cooper's ability to expose such falsity is curtailed when he is afforded limited means by which to test the accuracy of the witnesses' testimony.

Beyond that, the government informed Mr. Cooper by e-mail on March 28, 2013 that the depositions in Indonesia "appear likely to require that all parties to [*sic*] submit their questions in writing ahead of time, and that the questions be asked by a magistrate."  E-Mail from Jonathan

---

(continued…)

right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense.  This right is a fundamental element of due process of law.").

Hooks, AUSA to Julia L. Cronin and H. Heather Shaner (Mar. 27, 2013 19:08 EST) (Exhibit D). Such methodology improperly requires the defense to disclose its questions in advance, and fails to afford the defense the right to contemporaneously cross-examine the witnesses on testimony they provide in response to the government's questions.[6] The Second Circuit allowed a deposition by written question administered by a French magistrate in *United States v. Salim*, 855 F.2d 944, 947 (2d Cir. 1988). However, in *Salim*, the government and the defense submitted multiple rounds of written questions to the French court. *Id*. Specifically, the government and the defense submitted an initial round of written questions; the witness responded; the responses were translated; and, during the course of the deposition, the prosecutor and defense counsel were readmitted to the room, and the record was read to them in the absence of the witness. *Id*. Defense counsel then submitted additional cross-questions to the magistrate, and the deposition recommenced. *Id*. at 947-48. This procedure was repeated once more thereafter. *Id*. The deposition was then interrupted for one week, while defense counsel returned to New York and reviewed the transcript of the proceedings with the defendant. *Id*. at 948. The deposition recommenced in Paris, and a new round of questions were posed to the witness using the same procedure. *Id*. There are no guarantees that such procedures for multiple rounds of questioning or multiple depositions are in place to even begin to attempt to satisfy Mr. Cooper's need to conduct a complete and thorough cross-examination.[7] The D.C. Circuit has recognized that

---

[6] The defense objects to the proposed procedure of deposition by written question as meaningless and not even close to affording the opportunity to conduct an effective cross-examination. However, in the event the Court orders the deposition over the defense objection, the defense requests that it submit its questions *in camera* directly to the magistrate in Indonesia. Further, the defense requests that it be able to see the government's questions in advance, as cross-examination would be even more meaningless than already proposed if the defense was denied access to the government's proposed questions.

[7] The defense heeds the Court's aversion to speculative identification of procedural deficiencies and therefore only lists the incurable flaws we know, at this time, will be in place and does not list every potential flaw with the proposed Indonesian depositions. However, there will likely be many additional procedural deficits that the

Confrontation Clause concerns are heightened with the significance of the missing witness to the prosecution's case, and the proposed foreign depositions simply do not afford the requisite protections.  *See United States v. Foster*, 986 F.2d 541, 543 (D.C. Cir. 1993) ("The more important the witness to the government's case, the more important the defendant's right, derived from the Confrontation Clause of the Sixth Amendmnet . . . .").

## V.      There is No Injury to the Government in Denying The Rule 15 Depositions

In *Craig*, the Court recognized that in only limited circumstances would the interest of the State be greater than the defendant's right to confrontation. 497 U.S. at 848.  By its own admission, the government can try this case without the testimony of Messers Nababan and Sudjiarto.  On March 1, 2013, the Court conducted a status hearing.  There the attorney for the United States informed the Court that no depositions had yet been scheduled due to delays in Indonesia, and requested an extension until June 30, 2013 to conduct Rule 15 depositions of the witnesses in Indonesia.  At that time, the following exchange occurred between the Court and the Assistant U.S. Attorney:

> THE COURT: What impact would it have on this case if next week somehow the parties found out definitively that these witnesses would not be available for depositions?
>
> MR. HOOKS: The impact would be on the, I guess **– the government would still be able to proceed. We could make our case without the victims of the fraud**, but in my experience, I

_____

 (continued…)

government either cannot, or will not, address at this time – such as whether the defense will be permitted to object to questions if they are asked by the Indonesian magistrate, and if such objections are lodged, whether anyone will be able to rule on those objections.  This is but one example of the litany of procedural specifics that have not been addressed.  The plain fact is that the government has made no commitments about the procedures that will be in place at the requested Indonesian depositions, and the defense should not have to guess what those procedures will be.  The government should guarantee the procedures that will be in place before the defense is ordered to submit to the deposition so that the defense may raise timely and appropriate challenges.  *See Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1035 (1973) ("procedural and evidentiary rules that control the presentation of evidence may not compromise a defendant's Sixth Amendment rights.").

would feel that the government's case would be limited without
being able to present the live actual victims of the fraud to the
jury . . .

Dkt. 33, Mar. 1, 2013, Hearing Transcript 6:7-15 (emphasis added).  Indeed, Mr. Hooks

informed the Court at the March 1, 2013 hearing that the Indonesian case is no longer pending

against Mr. Nababan and Mr. Sudjiarto.  Thought they are not presently permitted to leave the

country due to an appeal, the appeal may soon be resolved, allowing them to be present in the

United States for live cross-examination at the time of trial.  Dkt. 33, Mar. 1, 2013, Hearing

Transcript 3:3-15.  Accordingly, as Mr. Cooper's constitutional rights would almost certainly be

infringed, and the government can proceed without such injury to Mr. Cooper's rights, there is

no public policy interest in ordering the Rule 15 depositions, much less admitting them.

## CONCLUSION

It may be true that, in some circumstances, foreign depositions do not offend the

procedural safeguards known and reliably used by U.S. courts.  However, Rule 15 depositions in

this case cannot stand where procedural imperfections eviscerate the rights afforded to Mr.

Cooper by the Constitution.   "There are few subjects, perhaps, upon which this Court and other

courts have been more nearly unanimous than in their expression of belief that the right of

confrontation . . . is an essential and fundamental requirement for the kind of fair trial which is

this country's constitutional goal."  *Pointer v. Texas*, 380 U.S. 400, 405 (1965).  "The fact that

the Government requires the assistance of videotaped depositions in order to prosecute

international cases is not sufficient to make it constitutional.  In this, as in other criminal cases,

the demands of efficiency and even necessity, do not create automatic exceptions to

Constitutional requirements."  *United States v. Nippon Paper Indus. Co.*, 17 F. Supp. 2d 38, 42

(D. Mass 1998).

16

For each of these reasons, Mr. Cooper respectfully requests that the Court reconsider its December 28, 2012 Order permitting the government's Rule 15 depositions to proceed, and deny the government's request to take depositions pursuant to Fed. R. Crim. Pro. 15.

Dated:  April 7, 2013                              Respectfully Submitted.


_____/s/_____
H. Heather Shaner, Esq.
1702 S Street N.W.
Washington, D.C. 20009
Tel. 202 265 8210
hhsesq@aol.com


_____/s/_____
Julia L. Cronin, Esq. (Bar No. 500582)
Jones Day
51 Louisiana Ave. N.W.
Washington, D.C. 20001
Tel. 202 879 3742
Fax. 202 626 1700
jlcronin@jonesday.com

**Attorneys for Defendant Jon C. Cooper**

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing Motion to Reconsider Oder to

Take Foreign Depositions on behalf of Jon C. Cooper has been served on opposing counsel via

email and electronic notice via the Court's CM/ECF system this 7th day of April, 2013.

/s/*Julia L. Cronin*
Julia L. Cronin, Esq. (Bar No. 500582)
Jones Day
51 Louisiana Ave. N.W.
Washington, D.C. 20001
Tel. 202 879 3742
Fax. 202 626 1700
jlcronin@jonesday.com