## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Crim. No. 12-cr-211 (JDB)** |
| **JON C. COOPER,** | |
| **Defendant.** | |

## REPLY IN SUPPORT OF MOTION TO RECONSIDER
## ORDER TO TAKE FOREIGN DEPOSITIONS

By its own admission, the Government wishes to take Rule 15 depositions of Hotasi Nababan and Tony Sudjiarto in Indonesia, so that it may use their testimony at Mr. Cooper's trial.  But they are inadmissible for that purpose because they would deprive Mr. Cooper of his constitutionally-protected right to a full and fair opportunity to cross-examine Nabaan and Sudjiarto.  Indeed, no procedures have been formalized and endorsed by the Republic of Indonesia, and the Government's requested procedures do not pass constitutional muster under *Crawford v. Washington,* 541 U.S. 36 (2004), and its progeny.  Those cases establish unequivocally that "[w]here testimonial evidence is at issue . . .the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id.* at 61, 68.  The Government initially attempts to obscure the point.  All of the cases upon which it relies, save one which does not support its position, predate the U.S. Supreme Court's seminal decision in *Crawford.*  Instead of coming to grips with *Crawford,* which the Government nowhere even mentions, the Government ultimately argues that the

motion is "premature," ignoring the post-*Crawford* precedent that it is "prudent to address [Confrontation] issues prior to the taking of deposition." *United States v. Csolkovits*, 794 F. Supp. 2d 764, 770 n.5 (E.D. Mich. 2011); *see also* Mar. 31, 2013 Hr'g Tr. 14:4-20 (Dkt. No. 33) (this Court expressing the same concern over allowing depositions that cannot survive Confrontation Clause challenge).

The Government additionally does not even clear the twin hurdles to taking these depositions that appear on the face of the Rule 15 itself.  Far from carrying its acknowledged burden of establishing the materiality of the anticipated deposition testimony, the Government concedes that the deposition testimony is **un**necessary.  Nor has the Government proved that the two deponents are "unavailable."  Beyond that, the Government fails to address the compelling countervailing factors that prejudice Mr. Cooper and demonstrate that these depositions cannot be completed consistent with his constitutional rights.

## ARGUMENT

I.     **The Confrontation Clause Bars the Use of Depositions in a Criminal Trial Where Counsel Does Not Have the Opportunity to Cross-Examine the Witnesses.**

As set forth in the Motion to Reconsider, *Crawford* sets forth the relevant rule for when testimonial, out-of-court statements may be admitted in a criminal trial: the Confrontation Clause requires that evidence be "test[ed] in the crucible of cross-examination," and thus "[w]here testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination."  *Crawford*, 541 U.S. at 61, 68.  Statements taken in deposition are unambiguously "testimonial," *Davis v. Washington*, 547 U.S. 813, 826 (2006), and thus without the opportunity to cross-examine a Rule 15 deponent, his deposition cannot be admitted at trial.

The proposed procedures set forth in the Government's opposition brief make clear that Indonesian procedure does not permit cross-examination.  According to the Government's opposition brief, the defendant will have to submit questions *in advance* of the direct testimony, and an Indonesian magistrate will pose those questions to the witness along with any follow-ups, with no assurance that counsel will be able to directly question the witnesses.  Dkt. 39 at 6. Forbidding direct cross-examination and instead limiting counsel "to submitting written questions to be posed by the presiding Magistrate" is plainly "insufficient to guarantee [a defendant's] Confrontation Clause rights" post-*Crawford*.  *Csolkovits*, 794 F. Supp. 2d at 770. Rather, *Crawford* requires an "opportunity for *th[e] defendant* to cross-examine the declarant, and nothing less."  *Id.* at 772 (emphasis in original).

Remarkably, the Government's brief does not even mention *Crawford*, let alone try to justify how these procedures meet the cross-examination requirement.  Instead, the Government cites almost exclusively  pre-*Crawford* confrontation cases, which largely permitted depositions to be admitted at trial because they were "reliable" under the standards of *Ohio v. Roberts*, 448 U.S. 56 (1980).[1]  *See* Dkt. 39 at 9-11.  But the Government tried this precise gambit in *Csolkovits*, where the court took the Government to task for "contin[uing] to cite pre-*Crawford* cases that are of questionable continued vitality in light of *Crawford* and its progeny's shifting and refocusing on the Confrontation Clause analysis from indicia of reliability and face-to-face confrontation to effective cross-examination."  794 F. Supp. 2d at 770; *see also, e.g.*, *Crawford*, 541 U.S. at 68 (overruling *Roberts* because "[w]here testimonial statements are at issue, the only

---

[1] *See United States v. Salim*, 855 F.2d 944, 954 (2d Cir. 1988) (allowing deposition because it "bore sufficient 'indicia of reliability'" under *Roberts*); *United States v. McKeeve*, 131 F.3d 1, 9 (1st Cir. 1997) (admissibility based on whether statements "possess sufficient indicia of reliability"); *United States v. Casamento*, 887 F.2d 1141, 1172-74 (2d Cir. 1989) (finding testimony not "inherently unreliable," following *Salim* test).

indicum of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation."); 4 James Wm. Moore et al., *Moore's Federal Practice* § 615.04 (Matthew Bender 3d ed. 1997)  (after *Crawford*, "prior cases allowing under exceptional circumstances the admission of depositions at which the defendant did not have a full opportunity to cross-examine the deponent, should now be regarded as suspect.").

Tellingly, in the *only* post-*Crawford* case cited in the Government's opposition brief, a Rule 15 deposition was only admitted into evidence because the district court required "procedures . . . to replicate the 'rigorous adversarial testing' present in a face-to-face confrontation," and where the  "[defendant's] counsel actively participated throughout these depositions, objecting frequently during the government's direct examination and cross-examining each of the witnesses at length." *United States v. Abu Ali*, 528 F.3d 210, 241-42 (4th Cir. 2008).  No such procedures are outlined in the Government's brief.

Perhaps recognizing the inadequacy of the procedures detailed in its opposition brief, the Government asserts that it has been requesting an opportunity for direct interrogation of the witnesses.  Dkt. 39 at 7 n.8.  After the Government's opposition was filed, it sent undersigned counsel an e-mail stating that Indonesian "will relent on the magistrate-questioning procedure" and that "[i]t now appears counsel for each side will be permitted to directly question the witnesses."  Ex. A (4/26/13 e-mail from J. Hooks to H. Shaner and J. Cronin).  Even assuming such procedures were formalized and endorsed by the Republic of Indonesia—and they have not been[2]—these procedures still deprive Mr. Cooper of his right to effective cross-examination.

---

[2] In the seven months since Mr. Cooper was indicted, the government has failed to produce procedures endorsed by the Republic of Indonesia.  Rather, its opposition stated only that the Government "has spoken with representatives from the Republic of Indonesia several times concerning the depositions" and that "Indonesia *may* provide . . . a written summary of the

*First*, while the Government's latest e-mail states that "[i]t now appears counsel for each side will be permitted to directly question the witness," Ex. A (4/26/13 e-mail from J. Hooks to H. Shaner and J. Cronin), it does not state that defense counsel will be permitted unfettered, rigorous, U.S.-style cross-examine of the witness based on the answers given during the direct testimony.  It would not be enough to simply let defense counsel ask questions that amount to more or less a "direct examination," where the defense is permitted to ask questions, but not to respond to the Government's points.  Rather, *Crawford* is clear that the defense must be able to fully cross-examine the witnesses as they could with a live in-court witness.  *See, e.g.*, *United States v. McGowan*, 590 F.3d 446 (7th Cir. 2009) (confrontation clause satisfied when witness "was able to fully cross-examine [the witness] on several different occasions, during depositions to preserve her core testimony and during later depositions to address issues raised when additional documents were produced to the defense."); *United States v. Cannon*, 539 F.3d 601

---

(continued…)

procedures to be used." Dkt. 39 at 5 (emphasis added).  In its April 26 email, the Government stated, "Mr. Muzhar agreed to reduce to writing the procedures to be used." Ex. A (4/26/13 e-mail from J. Hooks to H. Shaner and J. Cronin).  However, no signed declaration by any Indonesian official guaranteeing the procedures has been produced, and while the government has referred to various Indonesian officials – the "Indonesian AGO prosecutor," the "head of the Indonesian Central Authority," and, mentioned for the first time at the April 11 status conference a "Mr. Muzhar," whose title the Government is not even know. Apr. 11, 2013 Hr'g Tr. 3:813 ("I believe he's an official with the Minister of Justice . . ."). The Government has never provided complete, verifiable information about the names and official titles of the individuals with whom the government is communicating and whom the government asserts are making commitments on behalf of the Republic of Indonesia.

Before *any* depositions take place, this Court should require the Government to produce a formal, written, agreed-upon set of procedures that satisfy Mr. Cooper's confrontation rights, or else forbid it from taking the depositions.  The court may plainly condition Rule 15 depositions on such assurances.  *See, e.g.*, *Abu Ali*, 528 F.3d 210, 239-42;  *United States v. Sanford*, 860 F. Supp. 2d 1, 11-12 (D.D.C. 2012)  (refusing to allow Rule 15 depositions unless deponents signed fully executed, notarized affidavits waiving any Fifth Amendment privilege associated with their testimony regarding the events detailed in the government's superseding indictment).

(7th Cir. 2008) (no confrontation clause problem with use of deposition because defendant "was present with his counsel during the deposition, and [the witness] was subjected to full cross-examination.").

*Second*, even assuming arguendo that defense counsel is permitted a full opportunity to directly cross-examine the witnesses, Indonesia has indicated it does not have a procedure to compel witnesses to answer all questions.  Dkt. 39 at p.6, n.6.  Even if, as the Government newly asserts in its brief, the witnesses will be compelled to ***attend*** the depositions, the defense's entitlement to "a full and fair opportunity to probe and expose [testimonial] infirmities [such as forgetfulness, confusion, and evasion]" *Delaware v. Fentsterer*, 474 U.S. 15 at 22, through cross-examination will be significantly impaired by the fact that the witnesses cannot be compelled to answer all questions.  As the Supreme Court held, it is "imperative that [the deponents' statements] be tested to tease out the truth," *Crawford*, 541 U.S. at 67.   Full, productive cross-examination is impossible if the witness can simply clam up if he does not feel like answering.  *See, e.g.*, *United States v. Sanford*, 860 F. Supp. 2d 1, 11-12 (D.D.C. 2012)  (requiring witnesses to waive Fifth Amendment privilege associated with their testimony regarding the events detailed in the government's superseding indictment).

*Third*, the procedures do not allow for this Court to rule contemporaneously on objections.  The parties agree that this is not an appropriate task for the Indonesian magistrate; the Government instead proposes that the defense and the Government submit written objections after the depositions are completed.  This falls far short of what occurred in *Abu Ali* (relied upon by the Government), where one of the factors supporting the use of a Rule 15 foreign deposition was the fact that a "live, two-way video link was used to transmit the proceedings to a courtroom in Alexandria, [Virginia]," and the "trial court presided over the deposition testimony of the

[foreign deponents] from the courtroom in Alexandria, ruling on objections as they arose." 528 F.3d at 239-240. Such a procedure would afford the questioning party an immediate opportunity to cure any potential defect, while *post-hoc* objections leave the parties to argue, and the Court left to decide, issues that might have been cured if raised immediately.

*Fourth*, the Government's proposed procedures do not ensure real-time transcription and translation; rather, it "*expects* the proceedings will be translated / interpreted from Indonesian to English by an official interpreter," and suggests that alternatively, Indonesian officials might only "permit the government to create a transcript based on the video/audiotape of the proceeding." Dkt. 39 at 7. Needless to say, the defense cannot properly cross-examine the Government's witnesses, expose the infirmities of their testimony, or pin them to their prior statements without contemporaneous, real-time transcripts. Such was the case in *Abu Ali*, where "a translator [was] also present in the room in Saudi Arabia while the [witnesses] were being deposed," and "[a] court reporter in Alexandria transcribed the testimony in real time." 528 F.3d at 239-240. Unless the same can be assured here, there can be no effective cross-examination.[3]

*Fifth*, there is still no procedure by which the Indonesian witnesses will take a proper oath prior to their testimony, and without an oath, there can be no effective confrontation. *Crawford*, 541 U.S. at 70 ("[w]ithout an oath, one usually did not get to the second step of whether confrontation was required") (Rehnquist, C.J., concurring); *California v. Green*, 399 U.S. 149, 158 (1970) ("Confrontation . . . insures that the witness will give his statements under oath—thus

---

[3] For the same reason, the Government's claim that the proceedings will be videotaped would also be necessary to proper cross-examination, Dkt. 39 at p. 7, as part of the defense's confrontation right is the right to have the fact-finder observe the demeanor of the witness. *See Govt. of Virgin Islands v. Aquino*, 378 F.2d 540, 548 (3d Cir. 1967); *accord Abu Ali*, 528 F.3d at 239-240 ("both the witnesses and Abu Ali were videotaped during the depositions, so that the jury could see their reactions.").

impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury"); *cf. United States v. Alvarez*, 837 F.2d 1024, 1029 (11th Cir. 1988) ("Foreign deposition testimony, because of the absence of a sanction for perjury, is suspect.").

To be sure, the Government asserts that the Indonesian witnesses will testify under oath or affirmation, Dkt. No. 39, but such an oath would effectively be meaningless without a mechanism to enforce it.  On its face, the Indonesian perjury law applies to "[a]ny person who is in the cases that a statutory provision demands a testimony under oath . . . ."  Dkt. 37, Ex. C Penal Code of Indonesia Chapter IX, Perjury and False Testimony, Article 242, Paragraph 1. The Government, however, has not pointed to any applicable statutory provision which would put the witnesses under possible penalty of perjury,[4] and there is no formal statement by Indonesian authorities indicating whether the witnesses will be subject to perjury if they break their oath, or what the source of that penalty would be.[5]

---

[4] The Government asserts that Article 18 of the Indonesian Criminal MLA Law is an applicable statutory provision.  Dkt. 39 at 13.  However, Article 18 provides "such testimony may not be submitted or used in any other criminal proceedings against a Person concerned for any action committed or alleged to have violated the Law of Indonesia, except in a trial of the Person for perjury or providing false information with respect to the testimony."  Dkt. 37, Ex. A, Law of the Republic of Indonesia Number 1 Year 2006 Concerning Mutual Legal Assistance in Criminal Matters.  Article 18 is permissive; it allows deposition testimony to be used in a trial for perjury, but Article 18 does not itself "demand a testimony under oath."

Likewise, the Government's assertion that the witnesses could face sanctions for perjury in the United States is meaningless.  As addressed in the Motion to Reconsider, Dkt. 37 at 10, the United States has no extradition treaty with Indonesia, and therefore, the witnesses could not be punished – and therefore could not be deterred from false testimony.

[5] The Government asserts for the first time that the Republic of Indonesia will require the witnesses to appear at the proposed depositions, claiming their participation is not voluntary, but compelled evidence under Indonesian Criminal MLA Law. Dkt. 39 at 6, 12.  The defense first raised this issue at the March 1, 2013 status conference, and the Government did not dispute the defense's conclusion that Indonesian witnesses were participating voluntarily. Mar. 31, 2013 Hr'g Tr. 12:10-17.  Of the various procedures the Government has suggested it believes will be

*     *     *

Simply put, at present, the Government proposes to take depositions without any formal agreement with Indonesia as to what those procedures will be, and admits that the depositions might be unsworn, untranslated, and without the opportunity for unfettered direct cross-examination.  The Confrontation Clause demands far more, and the Government should not be permitted to take depositions that will never be held admissible at any criminal trial.[6]

---

(continued…)

used, the Government has never asserted that the Indonesian witnesses will testify subject to a subpoena (or the Indonesian equivalent).

[6] The Government's assertion at Dkt. 39 p.8 n.10, that Mr. Cooper "regard[s] confrontation as having little value here" is inaccurate and misleading.  At the January 10, 2013 hearing, Mr. Cooper sought permission from the Court to travel to Israel for the religious holiday of Passover. Jan. 10, 2013 Hr'g Tr. 10:5-11.  The government informed the defense that if Mr. Cooper were permitted to travel for Passover, "should depositions be ordered during the time period that Mr. Cooper is in Israel, that he voluntarily absent himself and waives any right to participate in the Indonesian depositions." *Id*. at 12:16-20.  At the time, no depositions had been scheduled, and Mr. Hooks himself declared that he would be unavailable for travel to Indonesia for approximately one month surrounding his pregnant wife's due date of March 11, *id*. at 2:23-4.  There was little, if any, chance that depositions would be ordered during the given period.  At present, Mr. Cooper has been fully instructed as to the importance of his Sixth Amendment rights and the fact that the proposed depositions are, in effect, a portion of his trial.  Accordingly, if Mr. Cooper could be construed as ever having waived his right to fully participate in these depositions, he rescinds such waiver, and stridently asserts his desire to exercise his constitutionally-protected rights and fully participate in the proposed depositions.

Further, the Government characterizes Mr. Cooper's reluctance to travel to Indonesia to participate in the depositions for fear of arrest, incarceration, or bodily harm as a "self-inflicted limitation," Dkt. 39 p.6 n.5, and relies on *United States v. Siddiqui*, 235 F.3d 1318, 1323 (11th Cir. 2000) for support.  This situation is entirely distinct from *Siddiqui*.  There, the defendant did not attend because he feared his family and finds, still living in India, would suffer religious persecution were Siddiqui to travel to Japan or Switzerland for depositions.  Here, Mr. Cooper fears for *his own* liberty and safety if he were to travel to the very country where the Government is actively communicating with the Indonesian AGO prosecutor and the Indonesian Central Authority about the facts and circumstances of this very case.  Mr. Cooper is presumed innocent until proven guilty in the United States, and the fact that he fears the Indonesian authorities may arrest him is anything but a self-inflicted problem.  Indeed, the defense has requested that the Government request a letter of safe passage from the Indonesian representative the Government has been working with in requesting assistance pursuant to the Indonesian

**II.     Even Apart from the Lack of Confrontation, the Government Has Still Failed to Demonstrate that Rule 15's Requirements are Satisfied.**

The Government concedes, Dkt. 39 at 2, that it bears the burden of demonstrating that 'exceptional circumstances' necessitate the preservation of testimony through such a deposition, and must show among other things "(1) the materiality of the testimony; and (2) the unavailability of the witness to testify at trial." *United States v. Kelley*, 36 F.3d 1118, 1124 (D.C. Cir. 1994).   In cases where the Government pursues Rule 15 depositions, courts have noted that "depositions are authorized 'when doing so is necessary to achieve justice and may be done consistent with the defendant's constitutional rights.'" *United States v. Mueller*, 74 F.3d 1152, 1156 (11th Cir. 1996) (citations omitted) (relied upon for other bases in *United States v. Warren*, 713 F. Supp. 2d 1, 3 (D.D.C. 2010)); *see also United States v. Drogoul*, 1 F.3d 1546, 1552 (11th Cir. 1993) (discussing preservation of testimony by Rule 15 deposition "absent significant countervailing factors which would render the taking of the deposition unjust.") (relied upon for other bases in *Warren*, 713 F. Supp. 2d at 4).   The factual circumstances of this case, including information newly disclosed by the Government within the past week, clearly establish that the Court should reconsider its December 28, 2012 order permitting the Government's Rule 15 depositions.

*First*, as stated in the Motion to Reconsider, Dkt. 37 at 15, by its own admission the Government can try this case without the testimony of Messers Nababan and Sudjiarto.[7]

---

(continued…)

Criminal MLA Law so that Mr. Cooper may attend the depositions without fear for his liberty or personal safety in Indonesia.

[7] At p.5 of its motion, the Government claims its case would be limited were it not to present testimony from the actual victims of the fraud.  Dkt. 39.  As an initial matter, given that Mr. Cooper has not been convicted, the Government should refer to the witnesses as the ***alleged***

Mar. 31, 2013 Hr'g Tr. 6:7-15. This plainly calls into question the materiality of the depositions, and given the significant constitutional problems with the proposed depositions, should be sufficient to deny the Rule 15 request.

*Second*, based on information disclosed by the Government on April 25, 2013, the Government cannot establish that the witnesses are unavailable for trial. If the witnesses are constitutionally available, then the depositions may not even be used at trial, *Crawford*, 541 U.S at 68, and so it would be improper and wasteful to allow Rule 15 depositions. *United States v. Drogoul*, 1 F.3d 1546, 1557 (11th Cir. 1993) ("[I]f there is very little chance that a deposition will be admissible – if the witnesses are available to testify live, for example—the district court need not engage in the wasteful practice of authorizing useless depositions."). While originally the Government claimed that the witnesses would be banned from travel due to an ongoing criminal investigation, the Government has since informed the defense via e-mail that "the Indonesian AGO prosecutor handling the matters against Mr. Nababan and Mr. Sudjiarto stated on or about Feb. 14, 2013 (immediately prior to their acquittal) that it was his belief that if they were found not guilty, the travel ban will be lifted and that they would be permitted to travel to the United States to testify." Ex. B (4/25/13 Email from J. Hooks to J. Cronin and H. Shaner). The Government attempts to re-establish unavailability based on a speculative statement by the head of the Indonesian Central Authority that "no such travel would be permitted, and a travel ban would be imposed if the witnesses attempted to arrange such travel, even if as a technical

---

(continued…)

victims of the fraud. Beyond that, the competing concerns here are easily resolved. The Constitution "safeguard[s] individual rights against the overwhelming coercive power of the State," *Csolkovits*, 794 F. Supp. 2d at 772 (citation omitted). As the Government can admittedly proceed without these witnesses while Mr. Cooper's physical liberty and constitutionally protected rights are placed in jeopardy, this is not even a close call.

matter no such ban was in place." *Id.* The "technical matter" that the witnesses are not, in fact, subject to a travel ban undermines the Government's claim that they are unavailable to testify at trial. The Government's opposition brief does not state that the witnesses remain unavailable, nor has it offered evidence (such as affidavits from the witnesses or the Indonesian government) indicating that the witnesses are unwilling or unable to participate in the upcoming criminal trial (the date for which has not even been set.)[8] With no showing of ***current*** unavailability, the Government's request for Rule 15 depositions is improper.

*Third*, the Government fails to effectively rebut the defense's very real, valid claims of prejudice from being forced to create trial testimony months in advance of trial, when *the Government itself – which has been investigating the facts of this case since at least April 2011 -* has not yet completed its discovery process. *See* Ex. A (4/26/13 email from J. Hooks to J. Cronin, H. Shaner). Further, beyond mere investigation, the defense's job is to *defend against* the Government's allegations and theories of the case. The Government's attempt to portray the two deponents as the equivalent of the first two witnesses at trial is incredibly misleading and inopposite to the Government's position on production of *Jencks* material for all witnesses in advance of the proposed depositions. Dkt. 39 at 20. The prosecution is ***required*** to make an opening statement and disclose to the defense and the jury its theory of the case even before the first two witnesses are called at trial. *See* Federal Judicial Center, Pattern Crim. Jury Instr. 1 (1988) (describing what the government will tell the jury in its opening statement and noting, at FN1, that the defense may reserve its statement until later) (attached hereto as Ex. C). Thus, by the time the first two witnesses at trial are *cross-examined*, the defense will have had the

---

[8] Although the witnesses reside in Indonesia, "[a] witness who resides abroad and outside the reach of the court's subpoena power is not automatically 'unavailable' without a further showing that he or she will not testify in court." *Warren*, 713 F. Supp. 2d  at 3.

opportunity to hear the Government's statements to the jury about its theory of the case and the information it intends to introduce at trial – critically important information for the defense in its on-going strategy development and execution.[9]  Beyond that, it is common practice in a complex case such as this for the Government to turn over all *Jencks* material for all witnesses before trial to minimize disruption of the trial.  Consequently, since the Government considers the proposed deponents the equivalent of the first two witnesses at trial, the Government should turn over *Jencks* material for all witnesses prior to the proposed depositions.  Even if the Government did not turn over all *Jencks* material for all witnesses prior to trial, if the deponents were the first two witnesses at trial they would be physically present in the United States and the defense could subpoena the witnesses and recall them to testify later in the trial if later-produced *Jencks* statements demonstrated such a need.  Accordingly, there is a dispositive difference between a deposed witness and a trial witness.[10]

The Government claims there is no basis for reading into Rule 15 an additional requirement to provide *Jencks* materials for all witnesses prior to the depositions.  However, the rules do not *prohibit* disclosure of *Jencks* materials for all witnesses, and, as the ordering of Rule 15 depositions is an *extraordinary measure* within the discretion of the Court, the Court is likewise empowered to fashion extraordinary discovery orders that will safeguard the

---

[9] The government dismisses the defense's sound argument that it would be prejudiced by conducting the proposed depositions would take place months before trial, indicating that the superseding indictment sufficiently summarizes the government's theory of the case.  The defense finds the government's position difficult to reconcile with the government's admission that it has not yet completed discover in this case.

[10] As Professor Richard D. Friedman of the University of Michigan Law School noted in an amicus brief to the Ninth Circuit in *United States v. Yida*, 498 F.3d 945, 950-51 (9th Cir. 2007),"since '[w]itnesses who testify live at the current trial speak as of the current time,' while witness testimony via 'transcript speaks as of the time of the prior proceeding, and cannot be updated,' the accused can only use recently acquired information in cross-examining a witness if that testimony is live.  The ability to cross-examine a witness at trial using the most current investigative information available cuts to the heart of the Sixth Amendment's confrontation clause."

defendant's Constitutionally protected right to confront witnesses and his Constitutionally

protected right to present at defense.  Indeed, at least one other court conditioned grant of a Rule

15 deposition on the Government's full disclosure of all materials which would be disclosed in

usual course under Fed. R. Crim. P. 16, including any and all *Brady* and *Jencks* statements.  *See*

*In re Grand Jury Proceedings*, 697 F. Supp. 2d 262, 275 (D.R.I. 2010) (permitting government

to depose 9 terminally ill potential witnesses pursuant to Rule 15(a) before the government

obtained an indictment against four individuals who were the target of an investigation where the

court formulated an order that "ensures the playing field is leveled (as much as possible) to

replicate the trial setting").

Rule 16 is intended to provide a criminal defendant "the widest possible opportunity to

inspect and receive such materials in the possession of the Government as may aid him in

presenting his side of the case." *United States v. Poindexter*, 727 F.Supp. 1470, 1473 (D.D.C.

1989).  In *United States v. Safavian*, 233 F.R.D. 12, 15 (D.D.C. 2005), Judge Friedman noted:

> Rule 16 of the Federal Rules of Criminal Procedure does not authorize the
> discovery or inspection of statements made by prospective government witnesses
> except as provided for by the Jencks Act, 18 U.S.C. § 2500.  Fed. R. Crim. P.
> 16(a)(2). This is true even if the statements are 'material to preparing the defense'
> unless (1) portions of those statements contain the substance of any relevant
> written or oral statements made by the defendant that are disclosable under Rule
> 16(a)(1)(A) or (B); or (2) they are exculpatory or favorable, so-called *Brady*
> material.

233 F.R.D. at 15 (citing *Brady v. Maryland*, 373 U.S. 83 (1963).  Judge Friedman went on to

define favorability under *Brady* as "any information in the possession of the government —

broadly defined to include all Executive Branch agencies — that relates to guilt or punishment

and that tends to help the defense by either bolstering the defense case or impeaching potential

prosecution witnesses" *Safavian*, 233 F.R.D. at 16**.** Here, statements made by prospective

Government witnesses **are** favorable to the defense in the sense that they allow the defense to

properly probe the testimony of the deponents in its one-and-only opportunity to examine them.[11]

The Government's final point – that Federal Rule of Evidence 804(b) may permit the admission of former testimony (if the testimony is taken under oath and subject to cross examination) that was obtained prior to opening statements – is circular logic, and runs afoul of *Crawford*.  The Government attempts to rely on the existence of Rule 804(b) as a justification to obtain an order to create former testimony in an unfairly prejudicial way, which it will then argue is reliable because it is former testimony.  The *Crawford* Court noted that "[l]eaving the regulation of out-of-court statements to the law of evidence would render the Confrontation Clause powerless to prevent even the most flagrant inquisitorial practices." *Crawford*, 541 U.S. at 50-51.  If anything, the requirements of Rule 804(b) support the defense's argument that the Court should deny the Government the Rule 15 depositions, since the procedures as proposed will not afford the defense the opportunity mandated by *Crawford* for a full and fair cross examination.  Consequently, the depositions would never be admissible in this Court, and this Court should rescind its' December 28, 2012 order.

## CONCLUSION

For each of these reasons, Mr. Cooper respectfully requests that the Court reconsider its December 28, 2012 Order permitting the Government's Rule 15 depositions to proceed, and deny the Government's request to take depositions pursuant to Fed. R. Crim. Pro. 15.

---

[11] The ABA Standards for Prosecutors require disclosure of exculpatory evidence in time for its effective use; to comply with this requirement, the government must disclose *Jencks* materials for the alleged co-conspirator and other witnesses offering testimony related to the testimony of these witnesses *before the proposed depositions* occur.

Dated:  April 29, 2013                    Respectfully Submitted.


                                    _____/s/_____
                                    H. Heather Shaner, Esq.
                                    1702 S Street N.W.
                                    Washington, D.C. 20009
                                    Tel. 202 265 8210
                                    hhsesq@aol.com


                                    _____/s/_____
                                    Julia L. Cronin, Esq. (Bar No. 500582)
                                    Jones Day
                                    51 Louisiana Ave. N.W.
                                    Washington, D.C. 20001
                                    Tel. 202 879 3742
                                    Fax. 202 626 1700
                                    jlcronin@jonesday.com

                                    **Attorneys for Defendant Jon C. Cooper**

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing Reply in Support of Motion to

Reconsider Oder to Take Foreign Depositions on behalf of Jon C. Cooper has been served on

opposing counsel via e electronic notice via the Court's CM/ECF system this 29th day of April,

2013.

/s/*Julia L. Cronin*
Julia L. Cronin, Esq. (Bar No. 500582)
Jones Day
51 Louisiana Ave. N.W.
Washington, D.C. 20001
Tel. 202 879 3742
Fax. 202 626 1700
jlcronin@jonesday.com