**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Criminal Action No. 12-211 (JDB)** |
| **JON C. COOPER,** | |
| **Defendant.** | |

<u>**MEMORANDUM OPINION**</u>

Before the Court is [37] defendant Jon Cooper's motion to reconsider the Court's December 28, 2012 order granting the government's motion to depose two Indonesian witnesses under Federal Rule of Criminal Procedure 15.  In his motion, Cooper asserts that the Rule 15 depositions would violate his rights under the Confrontation Clause of the Sixth Amendment.  Since the motion was filed, however, there have been material developments regarding the procedures to be used at the depositions, which have the potential to resolve many if not all of Cooper's confrontation concerns.  On May 16, 2013, the Court held a hearing on Cooper's motion to reconsider.  At the hearing, Cooper's counsel acknowledged that if the Rule 15 depositions proceed in the manner outlined in the government's May 10, 2013 status report, then Cooper may be afforded an adequate opportunity to confront the two Indonesian deponents.  Nevertheless, Cooper continues to oppose the taking of the depositions on several grounds, and argues that the government's latest status report – filed May 29, 2013 – is further indication that the depositions should not take place.  For the reasons that follow, the Court concludes that the scheduled depositions may go forward.

**BACKGROUND**

On December 28, 2012, the Court granted the government's motion to take the

depositions of Hotasi Nababan and Tony Sudjiarto.  See 12/28/12 Order [ECF 20].  Nababan

and Sudjiarto are executives of Company A, an Indonesian company allegedly defrauded by

Cooper as set forth in the superseding indictment.  See Superseding Indictment [ECF 36].  In

support of its motion to take the foreign depositions, the government represented that, in the

course of the alleged fraudulent scheme, Cooper and his co-conspirator communicated with

Nababan and Sudjiarto via email and in person and made false representations to them.  See

Gov't's Mot. for Order to Take Foreign Deps. [ECF 14] 3-4, 8.  The government also

represented that a prosecutor in the Indonesian Attorney General's Office said that neither

Nababan nor Sudjiarto would be permitted to leave Indonesia to give deposition or trial

testimony because of ongoing legal proceedings against them.  See id.

        Based on the allegations in the indictment and the government's representations, the

Court concluded that (1) the deposition testimony sought was material and (2) the two

witnesses were unavailable to testify at trial, and hence that the depositions could be taken

under Rule 15.  See 12/28/12 Order 1-2 (citing Fed. R. Crim. P. 15(a)(1); United States v.

Kelley, 36 F.3d 1118, 1124-25 (D.C. Cir. 1994)).  The Court also concluded that the foreign

depositions could be taken without Cooper's presence because the circumstances of this case

met the requirements of Rule 15(c)(3).  See id. at 2.  In concluding that Cooper would be able

to "meaningfully participate in the deposition through reasonable means," Fed. R. Crim. P.

15(c)(3)(E), the Court relied on the proposed procedures for the depositions, which the

government anticipated using "[t]o the extent permitted by Indonesian authorities."  See

12/28/12 Order 2-4 (requiring United States to request permission from Indonesian

authorities to take depositions pursuant to proposed procedures, which included examination

and cross-examination by counsel and Cooper's remote participation).

Following the Court's December 28, 2012 order, Indonesian officials approved the taking of the depositions of Nababan and Sudjiarto, and the United States took steps to schedule the depositions and gain permission to conduct the depositions as proposed.  The government has submitted a series of status reports indicating the posture of its requests to the Indonesian authorities.  See Status Reports, Dkt. Nos. 24, 25, 29, 42, 43.

On April 4, 2013, Cooper moved for reconsideration of the Court's order granting the motion to take depositions.  At that time, it appeared "likely" that the Indonesian authorities would require the depositions to proceed by written questions to be asked by a magistrate.  See Def.'s Mot. to Reconsider Order to Take Foreign Deps. [ECF 37] ("Mot. to Reconsider"), Ex. D, 3/27/13 Email.  In other words, government and defense counsel would have to submit their questions and exhibits to Indonesian officials in advance of the depositions, and an Indonesian magistrate would ask the questions at the depositions.  See id.  Government counsel had informed defense counsel of its request that the witnesses be deposed in trial-like fashion and of the Indonesian authorities' response that they "would consider whether to grant an exception."  See id.  As to other requested procedures, the Indonesian authorities had not yet given government counsel a response.  See id.  In Cooper's motion to reconsider, he argued that the anticipated deposition procedures would not adequately protect his confrontation rights for two main reasons: no oath would be administered, and he would not have a meaningful opportunity for cross-examination.  See Mot. to Reconsider 6-15.

On April 26, 2013, government counsel met with Cahyo R. Muzhar, Director of the Indonesian "Central Authority," to further discuss the depositions.  See Gov't's 5/10/13 Status Report [ECF 42] 1.  At the meeting, Muzhar agreed to many of the government's requests regarding the deposition procedures, including the requests that an oath or affirmation be

administered and that counsel for both sides be permitted to examine the witnesses.  Id. at 3-

4.  Specifically, as stated in the government's May 10, 2013 status report:

> 5.      Oath.  Indonesia will permit a United States consular officer to place
> each witness under oath or affirmation, and draw their attention to the
> importance of giving truthful testimony.
>
> . . .
>
> 7.      Mode of Questioning and Examination.  Indonesia will permit
> examination by both the United States and Counsel for Mr. Cooper.
> Indonesia will permit examination in the style of a deposition
> conducted pursuant to Rule 15 of the Federal Rules of Criminal
> Procedure in the United States and associated rules.  Understanding
> that a videotape of the depositions may be used at a trial in the United
> States, the examination will follow the pattern of such trial testimony:
> it will begin with direct examination by the United States, followed by
> cross-examination by Counsel for Mr. Cooper, and concluding with
> re-direct examination by the United States.

Id.

According to the government, Muzhar also acceded to its requests for the following:

the use of an official interpreter at the depositions; permission for Cooper to have a second

interpreter for his private use; videotaping of the depositions; transcription of the depositions

either in real time or after the fact; the parties' ability to lodge objections on the record; a

video and audio link allowing Cooper to observe the depositions live; and the opportunity for

Cooper to consult privately with his counsel by phone.  Id.[1]  Muzhar has agreed to put these

procedures in writing, but to date has not yet done so.  See id. at 1.

On May 16, 2013, the Court held a hearing on Cooper's motion to reconsider.  After

the hearing, the government filed a further status report, following a May 29 conversation

---

[1] Cooper has confirmed that he will not attend the depositions because Indonesia will
not guarantee him "safe passage."  See Def.'s Resp. to 5/29/13 Status Report [ECF 44]
("Status Resp.") 3; see also Gov't's 5/29/13 Status Report [ECF 43] 3.

with Muzhar.  In relevant part, the status report provides that: the depositions are currently

scheduled for the five days beginning June 24, 2013, and ending June 28, 2013; the

government has "reiterated its request to reach a written agreement or understanding on

deposition procedures" and Muzhar has "reiterated his earlier statement that he believed such

a written agreement/understanding could be reached prior to the depositions; and the

procedures expected to be used at the depositions are the same as the procedures set forth in

the government's previous status report, except for the following changes as to the manner of

questioning and examination, as described by the government:

> 5.      Mode of Questioning and Examination.  Mr. Muzhar has earlier made
> representations about the mode of questioning both in a meeting on or
> about March 27 and in a meeting on or about April 26.  In the May 29
> phone call, Mr. Muzhar stated that, in the initial stage of questioning,
> an Indonesian magistrate will question the witnesses based upon
> written questions submitted by the parties.  However, both parties
> would be permitted to ask follow-up questions, and there would be no
> restrictions on the follow-up questions, including the ability to re-ask
> questions posed by the Indonesian magistrate.  The undersigned
> expressed his particular concern that the defense be permitted to
> cross-examine the witnesses through counsel.  More than once, Mr.
> Muzhar gave his personal assurance that both parties would be able to
> ask all questions that they desired.  Based on the nature of this and
> previous conversations, it is the undersigned's impression that Mr.
> Muzhar was navigating a situation where (a) Indonesian practice and
> institutions ordinarily require examination by magistrate; (b) there is
> no Mutual Legal Assistance Treaty between the United States and
> Indonesia, and thus no formal policy covering these depositions; and
> (c) Mr. Muzhar's personal willingness (not shared by other Indonesian
> agencies, or within his agency) to permit such a mode of questioning
> during the depositions. . . .
>
> 6.      Submission of Questions.  After reiterating the United States' request
> that direct questioning be permitted, particularly on defense
> cross-examination, the parties discussed what Indonesia required to
> implement the magistrate-questioning procedure described.  Mr.
> Muzhar requested that each party (United States and defendant)
> provide a list of questions and topics to be covered, which list could be
> as short as one page.  Mr. Muzhar requested that such questions be
> submitted prior to the deposition by either email to him or to his office

by FedEx express mail.  Mr. Muzhar did not impose any earlier
deadline, but did indicate that express mail usually takes 5 days for
delivery.  The undersigned reiterated the previously-expressed defense
concern that neither the United States nor the witnesses be permitted to
see proposed defense cross-examination prior to the depositions.

5/29/13 Status Report 1-3 (footnotes omitted).  Cooper has filed a response to the

government's May 29, 2013 status report.

## DISCUSSION

At the May 16, 2013 motions hearing, defense counsel expressed three main

objections to the Rule 15 depositions as envisioned on that date: first, that Nababan and

Sudjiarto are no longer unavailable; second, that there remains too much uncertainty

surrounding the deposition procedures because the Indonesian authorities have not yet

committed to them in writing; and finally, that Cooper is entitled to full discovery – i.e., all

discovery that he would have before trial – before the depositions can be taken.  The Court

will address these issues in turn.

I.      Unavailability

In criminal cases, depositions may be taken only "to preserve testimony for trial" and

"because of exceptional circumstances and in the interest of justice."  Fed. R. Crim. P.

15(a)(1).  To demonstrate that "exceptional circumstances" necessitate a Rule 15 deposition,

the party seeking the deposition must show: "(1) the materiality of the testimony; and (2) the

unavailability of the witness to testify at trial."  Kelley, 36 F.3d at 1124.  In its December 28,

2012 order, the Court found both materiality and unavailability with respect to the two

Indonesian witnesses scheduled to be deposed.  Cooper argues, however, that because of

changed factual circumstances, the witnesses are no longer unavailable.[2]

At the time the Court ordered the depositions of Nababan and Sudjiarto, both were subject to a travel ban because they were being criminally prosecuted in Indonesia.  They were subsequently acquitted, and as a result, the travel ban that was in place has been lifted.  However, as government counsel advised the Court at the April 11, 2013 status conference, he was told that the Indonesian government had appealed the witnesses' acquittal and during the appeal they would not be allowed to leave the country.  See 4/11/13 Tr. of Status Hr'g [ECF 33] 3.  As government counsel clarified in an email to defense counsel, it is his understanding that "a travel ban would be imposed if the witnesses attempted to arrange [travel to the United States], even if as a technical matter no such ban was in place."  See Reply, Ex. B, 4/25/13 Email.  The government confirmed this understanding at the May 16, 2013 status conference and explained as follows: the Indonesian Central Authority is separate from the Indonesian Attorney General's Office; Muzhar, Director of the Central Authority and the person with whom the United States has been in contact about the depositions, believes that the Attorney General's Office, which is handling the prosecution of Nababan and Sudjiarto, would not let them travel to the United States if they were to try to do so; and to date, the United States has not been permitted to contact Nababan or Sudjiarto and hence does not know whether they would be willing to come here to testify if they could.

To show unavailability at this stage, the party seeking the deposition need not prove

---

[2]  Cooper argues briefly that the testimony of Nababan and Sudjiarto is not material because the United States has said that it would try this case even if it could not obtain their testimony.  See Def.'s Reply in Supp. of Mot. to Reconsider [ECF 40] 10-11.  This argument is without merit.  Nababan and Sudjiarto, as the victims of the alleged fraud and participants in relevant communications with Cooper, are likely to provide testimony that is highly material to the charges in the indictment.

conclusively that the prospective deponent will be unavailable to testify at trial.  See United States v. Drogoul, 1 F.3d 1546, 1553 (11th Cir. 1993) (quoting United States v. Sines, 761 F.2d 1434, 1439 (9th Cir. 1985) ("It would be unreasonable and undesirable to require the government to assert with certainty that a witness will be unavailable for trial months ahead of time, simply to obtain authorization to take his deposition.")).  As the Eleventh Circuit has stated, a prospective deponent will be unavailable for purposes of Rule 15(a) if "a substantial likelihood exists that [he or she] will not testify at trial."  Id.

Here, the Court concludes, the government has made a sufficient showing of unavailability for the depositions to be taken.  It is true that the government's showing would be stronger if, for example, a firm travel ban were still in place, or the witnesses had signed affidavits stating that they refused to come testify in the United States.  But the most up-to-date information before the Court – as represented by the United States – indicates that Nababan and Sudjiarto would not be permitted to leave Indonesia if they asked to do so at this time, and there is no indication whether or when that may change before trial.  Moreover, Indonesian officials have thus far prevented the United States from even contacting Nababan and Sudjiarto.  Hence, the government has had no way to ask the witnesses if they would be willing to testify at Cooper's trial, much less obtain affidavits from them.  And given the United States's lack of success in reaching Nababan and Sudjiarto, it would not be at all surprising if the United States could not secure their presence at trial, which is now set for January 2014, just over seven months away.  Finally, even if Nababan and Sudjiarto could leave Indonesia and said that they were willing to come here to testify, their presence at trial could not be guaranteed.  They are beyond the Court's subpoena power, and should they decide not to testify before the trial begins, their testimony could not then be compelled.  See

Drogoul, 1 F.3d at 1557 (citing 28 U.S.C. § 1783) ("[A]lthough the six prospective deponents stated in May 1993 that they were willing to come to the United States, they too are beyond the subpoena power of the United States courts.  The possibility remains that they could change their minds, in which case it would be impossible for the government to present their testimony.").  For all these reasons, there is a "substantial likelihood" that Nababan and Sudjiarto will not testify at trial, and so they are unavailable for purposes of Rule 15(a).  See Drogoul, 1 F.3d at 1553.

The Court's determination that the Rule 15 depositions may proceed "does not determine [their] admissibility" at trial.  Fed. R. Crim. P. 15(f).  To introduce all or parts of the depositions at trial, the government will have to establish the witnesses' unavailability at the time of trial.  See Fed. R. Evid. 804(b)(1).  If Nababan and Sudjiarto turn out to be willing and able to testify at trial, then their deposition testimony will not be admissible under Federal Rule of Evidence 804(b)(1).  But at present, the Court is satisfied that exceptional circumstances require taking their depositions to preserve testimony for trial.

II.     Confrontation

Cooper's initial Confrontation Clause challenges were premised on the likely deposition procedures as of the time he filed his motion to reconsider.  See Mot. to Reconsider 8-15 (arguing that lack of oath and opportunity for cross-examination would violate confrontation rights).  As noted, however, the procedures to be used have evolved and, according to the government, are now expected to include both the administration of an oath or affirmation and an opportunity for full cross-examination (albeit after initial questioning by a magistrate).  As such, most of Cooper's initial challenges are no longer viable.

Cooper raises several additional objections to the proposed deposition procedures in his reply, contending that even as revised the procedures would deprive him of his confrontation rights.  <u>See</u> Reply 4-9.  Most of these objections, however, assume procedural defects that may in fact pose no barrier to Cooper's effective exercise of his confrontation rights.  Cooper complains, for example, that Indonesia does not have a procedure to compel witnesses to answer all questions, that the Court would not be ruling contemporaneously on objections, and that the depositions may not be transcribed in real time.  <u>See id.</u> at 6-7.  But this Court is aware of no authority saying that effective cross-examination requires a means of compelling witnesses to answer questions, contemporaneous ruling on objections,[3] or real-time transcription.  If Cooper has any problems cross-examining the witnesses because of these aspects of the depositions, he may raise those problems later, as arguments against admissibility of the deposition testimony.  <u>See</u> <u>Drogoul</u>, 1 F.3d at 1555 ("If irreconcilable differences arise after the depositions have been taken and the translations made, then the depositions might properly be excluded from evidence at that time.").  Cooper additionally objects to the oath to be given, claiming that the oath cannot be enforced.  Reply 7-8.  But it appears that Nababan and Sudjiarto could be prosecuted for committing perjury under Indonesian law, and considering that some courts have ruled deposition testimony admissible even though it was not given under oath, the Court will not prevent the depositions from being taken based on Cooper's speculation that the oath will be inadequate.  <u>See</u> Gov't's Opp'n to Mot. to Reconsider [ECF 39] ("Opp'n") 11-13 (discussing Indonesian legal

---

[3] Indeed, Rule 15(e) states that a deposition must be taken in the same manner as a deposition in a civil action, and the Federal Rules of Civil Procedure contemplate the taking of deposition testimony subject to any objections to be ruled on later.  <u>See</u> Fed. R. Crim. P. 15(e); Fed. R. Civ. P. 30(c)(2).

provisions); <u>see also</u> <u>United States v. Sturman</u>, 951 F.2d 1466, 1481 (6th Cir. 1991); <u>United States v. Casamento</u>, 887 F.2d 1141, 1174-75 (2d Cir. 1989); <u>United States v. Salim</u>, 855 F.2d 944, 952 (2d Cir. 1988); <u>see also</u> Fed. R. Civ. P. 28(b)(4) (providing that evidence obtained in foreign deposition "need not be excluded merely . . . because the testimony was not taken under oath, or because of any similar departure from the requirements for depositions taken within the United States")).

In response to the government's most recent status report, Cooper also claims that "contrary to the procedures earlier promised, [he] will not be allowed full-ranging cross-examination." Status Resp. 2. But that is not what the status report says. It says that the depositions will begin with questioning by an Indonesian magistrate, and following that, both parties may then ask follow-up questions, with "no restrictions on the follow-up questions, including the ability to re-ask questions posed by the Indonesian magistrate." 5/29/13 Status Report 2. The status report says, moreover, that "Muzhar gave his personal assurance that both parties would be able to ask all the questions that they desired." <u>Id.</u> There is no indication that the follow-up questions will be limited to topics touched on by the magistrate's questions. And although the questioning by the magistrate will make the depositions different from a typical Rule 15 deposition, it is not clear to the Court that Cooper's right to full and effective cross-examination will be abridged in any way. <u>See</u> <u>Drogoul</u>, 1 F.3d at 1555 (district court might have had discretion to deny deposition request "were it abundantly clear that the depositions could not possibly be admitted at trial"). Hence, the government's May 29, 2013 status report does not present a reason not to <u>take</u> the Rule 15 depositions. <u>See id.</u> at 1554-55 (distinguishing between propriety of taking depositions and propriety of using them at trial).

The defense's final and now most strongly pressed objection to the deposition procedures is that the Indonesian authorities have not yet committed to the procedures in writing.  At this point in the proceedings, the government has gone back and forth with Indonesian officials over the procedures to be used at the depositions, and the government has represented to the Court that the Indonesians have agreed to most of the government's requests, including the request that counsel for both sides be allowed to "ask all the questions that they desire[]," even though witness questioning is ordinarily done by magistrate in Indonesia.  See 5/28/13 Status Report 2-3; 5/10/13 Status Report 3-4; see also Drogoul, 1 F.3d at 1555.  Although a written agreement on the deposition procedures would be preferable to oral assurances – and the Court certainly encourages the government to continue to seek such an agreement – the government has acted in good faith here, and it may be that oral assurances are the best that it can get.  Based on those assurances, as relayed by the United States, the Court is sufficiently confident that the deposition procedures outlined in the government's status reports will be followed and, if they are, that Cooper will be afforded a constitutionally adequate opportunity for cross-examination.  Hence, the Court will allow the depositions.  If the actual procedures vary from the procedures outlined, then Cooper will have ample opportunity to challenge the admissibility of the testimony on confrontation grounds.  See Salim, 855 F.2d at 952 ("As was demonstrated in this case, the parties and the court may not always know beforehand just what type of examination a foreign nation may permit the attorneys to conduct.  The district court therefore may prefer to consider these problems after the deposition has been taken, when it can examine the transcript and the actual circumstances under which the deposition was conducted.").

III.    Discovery

-12-

Cooper claims that he will be prejudiced by the taking of the Rule 15 depositions in advance of trial because discovery in this case is not yet complete.  He contends that he cannot meaningfully cross-examine the witnesses unless he has first received all materials required to be disclosed under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), <u>Giglio v. United States</u>, 405 U.S. 150 (1972), and the Jencks Act, 18 U.S.C. § 3500.  <u>See</u> Mot. to Reconsider 12-13.[4]  The government responds that it is only required to provide Jencks material for the witnesses to be deposed and that it has met its obligation to provide all such material.  <u>See</u> Opp'n 19-21.

Rule 15(e)(3) requires the government to "provide to the defendant or the defendant's attorney, for use at the deposition, any statement <u>of the deponent</u> in the government's possession to which the defendant would be entitled at trial."  Fed. R. Crim. P. 15(e)(3) (emphasis added).  Under the Jencks Act, the government must disclose "any statement" of a government witness called at trial "which relates to the subject matter as to which the witness has testified."  18 U.S.C. § 3500(b).  Neither Rule 15 nor the Jencks Act suggests a disclosure obligation as sweeping as that urged by Cooper.  And this is not surprising, as there is no sound reason for requiring pre-deposition disclosure of statements of witnesses other than the Rule 15 deponent, or exculpatory and impeachment information under <u>Brady</u> and <u>Giglio</u>, if such statements and information have no relation to the Rule 15 deposition testimony.

Yet Cooper insists that he is entitled to every piece of discovery in this case –

---

[4] Cooper also argues that he cannot meaningfully cross-examine the witnesses until he has heard the government's opening statement in this case.  The Court rejects this argument as frivolous.  As Rule 15 depositions are used "to preserve testimony for trial," they occur in advance of trial.  <u>See</u> Fed. R. Crim. P. 15(a)(1).  It would make no sense to make something that only occurs at trial – an opening statement – a prerequisite for taking a Rule 15 deposition.

including all Jencks, Brady, and Giglio materials that the government would have to disclose

before trial – in advance of the depositions of Nababan and Sudjiarto.  Cooper cites In re

Grand Jury Proceedings, 697 F. Supp. 2d 262, 275 (D.R.I. 2010), in which the court

conditioned the taking of pre-indictment depositions on the government's "full disclosure" of

"all materials which would be disclosed in the usual course under Fed. R. Crim. P. 16

including any and all Brady and Jencks statements."  But in that case, in which the "Targets"

(or would-be defendants) had not even been formally charged, the court deliberately crafted

an order tailored to its circumstances.  See id. at 274-75.  The broad disclosure obligations

imposed on the government can be seen as part of the court's attempt to level "the playing

field."  See id. at 272, 275.  In the ordinary case, it makes sense to require disclosure of

materials that the government possesses and must eventually turn over before trial, if the

defense can make use of those materials in cross-examining a Rule 15 deponent.  But the

Court sees no basis for making complete discovery a condition precedent to any Rule 15

deposition.

Here, the government has represented that it has already disclosed all "statements"

(including emails) of Nababan and Sudjiarto in its possession and that it does not have any

Brady or Giglio that it has not already disclosed.  And Cooper has not identified any materials

that the government has but has not disclosed that would be relevant to the Rule 15

depositions.  Hence, the Court will not impose a disclosure obligation on the government

beyond that set forth in Rule 15(e)(3).

Cooper also argues that under Rule 15(e)(3), the government is obligated to obtain

and produce statements made by Nababan and Sudjiarto in the course of the Indonesian

prosecution.  The government has responded that such statements (if any exist) are not in its

-14-

possession, custody, or control.  As it explained both at the motions hearing and in its most recent status report, the government has repeatedly asked the Indonesian authorities for statements of Nababan and Sudjiarto and records relating to the prosecution.  See 5/29/13 Status Report 3.  Government counsel was told, however, that Indonesian trial proceedings are not recorded or transcribed, and that Indonesia would not provide court records or Attorney General's Office records of the case against the two witnesses.  See id.; see also 5/10/13 Notice of Discovery Filing [ECF 34].

The Court finds that the government has met (and likely exceeded) any obligation it has under Rule 15(e)(3) with respect to the statements at issue.  The government is not required to produce statements it does not possess, and it does not possess any statements from the Indonesian prosecution.  The government also is not required to use its best efforts to obtain the statements from Indonesian officials, see United States v. Mejia, 448 F.3d 436, 444-45 (D.C. Cir. 2006), and even if it were, it has made good faith, though fruitless, efforts to obtain the statements from Indonesian officials, see United States v. Paternina-Vergara, 749 F.2d 993, 998 (2d Cir. 1984) ("[E]ven in the course of a joint investigation undertaken by United States and foreign law enforcement officials the most the Jencks Act requires of United States officials [is] a good-faith effort to obtain the statements of prosecution witnesses in the possession of the foreign government.").  Finally, the government has represented that the court decision in the proceedings involving Nababan and Sudjiarto is a publicly available record.  See 5/29/13 Status Report 4.  Hence, Cooper may obtain that decision (and any other publicly available court records) through the Indonesian legal consultant he has retained.  See Status Resp. 4.

IV.    Additional Matters

Having concluded that the Rule 15 depositions may go forward as scheduled, the Court will briefly address several related matters. First, the Court will grant Cooper's request to require the United States to pay the reasonable travel and subsistence expenses for both of Cooper's attorneys to attend the deposition. See Fed. R. Crim. P. 15(d)(1). The United States will have at least two representatives present at the depositions, and defense counsel's role will include not only cross-examining the witnesses but also communicating with Cooper by phone. Second, the Court will grant the government's request that a deadline be set by which any additional motions relating to the depositions and any objections to the depositions must be filed. All such motions and objections must be filed by not later than June 11, 2013. Third, in responding to the government's May 29, 2013 status report, Cooper has objected to the proposed process for submitting deposition questions and topics to an Indonesian magistrate and to the location at which Cooper will view the depositions remotely. See Status Resp. 1-4. The government's proposal to transmit, without reviewing, defense counsel's list of questions and topics to the Indonesian authorities is acceptable to the Court. However, the government should continue to seek assurances that the questions and topics submitted will not be shared with the witnesses before the depositions. See 5/29/13 Status Report 3 & n.4. Regarding the video-teleconferencing location, the Court is inclined to let Cooper view the depositions at the location of his choice – the Washington, D.C. offices of Jones Day – to the extent feasible. There may, however, be good reasons (technological or otherwise) why the video-teleconferencing must be done at a secure FBI location, as proposed by the government. Hence, the government should inform the Court of its position as to the location of the video-teleconferencing as soon as possible.

Finally, the parties have agreed on a January 2014 trial date, and defense counsel in

particular has represented that tolling the speedy trial clock is necessary for effective trial preparation.  In this complex case, there are voluminous discovery materials, and the foreign depositions authorized today will not be completed until the end of June.  Accordingly, the Court finds that the ends of justice served by granting a further continuance in this case outweigh the best interests of the public and defendant in a speedy trial.  See 18 U.S.C. § 3161(h)(7)(A), (h)(7)(B)(iv).  The speedy trial clock will be tolled until January 6, 2014.

## CONCLUSION

For the foregoing reasons, Cooper's motion to reconsider will be denied.  A separate order accompanies this memorandum opinion.


_____/s/_____
JOHN D. BATES
United States District Judge


Dated: June 3, 2013